FILED

2026 Mar-20  PM 04:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

|  |  |  |
|---|---|---|
| **MAYA DELION &** | ] | |
| **JACOB GOODSON,** | ] | |
|  | ] | |
|  | ] | |
| **Plaintiffs,** | ] | |
|  | ] | |
| **v.** | ] | **7:25-cv-2058-EGL;** |
|  | ] | **7:26-cv-2-EGL** |
| **TOWN OF WOODSTOCK, et al.,** | ] | |
|  | ] | |
|  | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION</u>

In two now-consolidated cases,[1] Maya Delion and Jacob Goodson have sued

the City of Woodstock, Alabama; the Bibb County Commission; UAB Hospital;

UAB Medical West; John Does 1-200; and Fictitious Defendants A-E. Doc. 1. The

Bibb County Commission, the City of Woodstock, UAB Hospital, and Medical West

ask the Court to dismiss the complaint for various reasons. *See* Docs. 7-9, 12, 15-16,

25, 31-32.  For the reasons below, the motions are **GRANTED**.

---

[1] On February 10, 2026, the Court consolidated *Delion v. City of Woodstock*, No. 7:25-cv-2058-EGL (N.D. Ala. Dec. 2, 2025), with *Delion v. City of Woodstock*, No. 7:26-cv-2-EGL (N.D. Ala. Jan. 2, 2026). Unless otherwise specified, all docket citations contained herein refer to the docket in case number 7:25-cv-2058.

## BACKGROUND

Because Delion and Goodson are defending against a motion to dismiss, the Court accepts their well-pleaded factual allegations as true and construes them in the light most favorable to Plaintiffs. *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). And because Plaintiffs are proceeding *pro se*, the Court must construe their complaint liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

### A. Facts

Maya Delion owned property in Bibb County, Alabama. Doc. 1 at ¶17. She lived in a home on that property. *Id.* Her son, Joseph Tyler Goodson ("Tyler"), lived nearby in a separate residence with his family. *Id.*

In December 2023, police officers from the Woodstock Police Department, the Bibb County Sheriff's Office, and other agencies entered the property. *Id.* at ¶¶1-2. Officers fired toward Tyler's residence, damaging the home, nearby structures, and vehicles. *Id.* at ¶¶20-21. They then arrested Tyler and remained with him after he was transported to UAB Hospital. *Id.* at ¶26.

Jacob Goodson witnessed these events. *Id.* at ¶10.

### B. Lawsuit

Maya Delion and Jacob Goodson sued under 42 U.S.C. § 1983. *Id.* at ¶¶30-37. They allege (1) unreasonable seizure of persons under the Fourth Amendment; (2) unreasonable seizure and destruction of property; (3) emotional and

2

psychological damage suffered as bystanders; (4) the facilitation of unreasonable seizure; and (5) *Monell* liability against the City of Woodstock and the Bibb County Commission. *Id.* Plaintiffs also assert state-law claims for wantonness, trespass, trespass to chattels, and property damage. *Id.* at 6.

Plaintiffs also sued Defendants in the Circuit Court of Bibb County, Alabama, raising identical claims. *See Delion*, No. 7:26-cv-2, Doc. 1-1. Defendants removed that case here, after which this Court consolidated the two. *Delion*, No. 7:26-cv-2, Docs. 1, 19.

The Bibb County Commission, the City of Woodstock, UAB Hospital, and UAB Medical West each move to dismiss. The Bibb County Commission also moves to strike the fictitious parties that Plaintiffs name. Plaintiffs responded to the Bibb County Commission's motions but failed to respond to any other motion.

A plaintiff's failure to respond to a motion to dismiss is not fatal. *See Walker v. Montgomery Cnty. Bd. of Educ.*, No. 2:20-cv-00978-WKW-SRW, 2022 WL 421078 at *1 n.2 (M.D. Ala. Jan. 25, 2022); *see also Anton v. Nationstar Mortg., LLC*, No. 5:11-cv-2619, 2011 WL 13134196, at *3 n.6 (N.D. Ala. Nov. 10, 2011). Rather, the Court must decide whether it will (1) permit the plaintiffs to file an out-of-time opposition brief; or (2) consider only the defendants' arguments and the complaint's allegations. *Giummo v. Olsen*, 701 F. App'x 922, 925 (11th Cir. 2017).

Because Plaintiffs have not sought permission to file a late response, the Court opts for the latter approach.

## STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* But those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although the Court must accept as true all factual allegations in the complaint, that principle does not apply to legal conclusions couched as factual allegations. *Id.*

## ANALYSIS

The Court first addresses the sufficiency of Plaintiffs' pleadings. It then considers Plaintiffs' failure to respond to UAB Hospital's and Medical West's motions to dismiss. The Court next evaluates the merits of the claims against UAB Hospital and UAB Medical West. Finally, it analyzes the Bibb County Commission and the City of Woodstock's potential liability under *Monell*.

4

## I.      "Shotgun Pleading" & Fictitious Defendants

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 10(b) requires numbered paragraphs, each limited to a single set of circumstances. These rules combine to compel clarity for the defendants facing claims and for the courts considering them. *See Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021). They are violated, for example, when plaintiffs assert multiple claims against multiple defendants without specifying which defendant is responsible for which act, or which claim is directed at which defendant. *Id.* at 1325. Such complaints are impermissible "shotgun pleadings." *Id.* at 1324-25.

Plaintiffs name the City of Woodstock, the Bibb County Commission, UAB Hospital, UAB Medical West, "John Does 1-200," and "Fictitious Defendants A-E" as defendants. *See* Doc. 1. Yet they tie no claim, except Count V, to any particular defendant. *See id.* at 5-6. Instead, they leave each defendant to guess which allegations apply to them. *Id.* Given the number of defendants, that is an impossible task, particularly where Plaintiffs' state-law claims lack even the minimal factual support offered for their federal claims. *Id.* For example, does UAB Hospital need to defend against claims of trespass to chattels or property damage? Perhaps not, because the complaint contains only a brief mention of the hospital, but maybe, because the complaint appears to allege nearly every claim against every defendant.

The Court need not "parse out such incomprehensible allegations," *Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020), but because the complaint warrants dismissal on other more significant grounds, this issue is rendered **MOOT**.

Further, fictitious party pleading is generally impermissible in federal court. *Vielma v. Gruler*, 808 F. App'x 872, 880 (11th Cir. 2020); *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1318 n.4 (11th Cir. 2015). It is only permitted where the fictitious label is mere surplusage because the plaintiff's description of the defendant is sufficiently clear to allow service of process. *Vielma*, 808 F. App'x at 880.

Plaintiffs here name two hundred "John Doe" defendants, and five "Fictitious Defendants." *See* Doc. 1 at ¶¶13-14. The descriptions given of these defendants are not so specific as to render their fictitious styling mere surplusage. *See id.* And because neither federal law nor the rules of procedure provide any basis for fictitious party practices, the Court **STRIKES** these fictitious defendants from the complaint.

## II.    Claims Against UAB Hospital

Despite the complaint's lack of clarity regarding which allegations apply to which defendants, for the sake of judicial economy, the Court will venture to connect the dots. *See* Fed. R. Civ. P. 1. The only plausible claim that might be alleged against UAB Hospital appears to be Count IV: "Continued Unreasonable Seizure (Hospital

Custody)." Doc. 1 at ¶33. Plaintiffs allege that UAB Hospital personnel "permitted or facilitated" Tyler's unlawful seizure while he was unconscious. *Id.* at ¶¶15-16. They bring these claims under 42 U.S.C. § 1983, asserting violations of Tyler's Fourth Amendment rights and their "familial rights." *Id.* at ¶33.

Sovereign immunity bars suits against state agencies absent consent or valid abrogation. *See Eubank v. Leslie*, 210 F. App'x 837, 844-45 (11th Cir. 2006). Congress did not abrogate state sovereign immunity in § 1983, and Alabama has not waived its immunity. *See Schopler v. Bliss*, 903 F.2d 1373, 1379 n.4 (11th Cir. 1990); ALA. CONST. art. I, § 14.

Whether an entity is "an arm of the state" and therefore entitled to sovereign immunity "is a question of federal law that can be answered only after considering the provisions of state law that define the agency's character." *Galette v. New Jersey Transit Corp.*, No. 24-1021, 2026 WL 598450, at *6 (U.S. Mar. 4, 2026) (internal quotation marks omitted).

UAB and its hospital operate as a division of the Board of Trustees of the University of Alabama, and the Board, rather than UAB Hospital, constitutes the proper defendant. *See Strickland v. Bd. of Trs. of Univ. of Ala.*, No. 2:14-cv-1389-WMA, 2014 WL 6749019, at *2 (N.D. Ala. Dec. 1, 2014); *Wiley v. Dep't of Energy*, No. 21-cv-933, 2021 WL 5051952, at *1 n.1 (E.D. La. Nov. 1, 2021). The Alabama Supreme Court and the Eleventh Circuit consider Alabama's state universities,

including the boards governing them, to be state agencies for sovereign immunity purposes. *See Harden v. Adams*, 760 F.2d 1158, 1163-64 (11th Cir. 1985); *Eubank*, 210 F. App'x at 844 ("The University of Alabama Board of Trustees is a state agency, not a state official acting in its official capacity" for sovereign immunity purposes); *Page v. Hicks*, 773 Fed. App'x 514, 518 (11th Cir. 2019); *Liberty Nat. Life Ins. Co. v. Univ. of Ala. Health Servs. Found., P.C.*, 881 So. 2d 1013, 1027-28 (Ala. 2003); *Rowell v. Fisher*, No. 2:23-cv-00034-LSC-HNJ, 2024 WL 4480133, at *4-8 (N.D. Ala. Sept. 16, 2024) (evaluating thoroughly whether "UAB hospital" is protected by sovereign immunity), report and recommendation adopted, No. 2:23-cv-00034-LSC-HNJ, 2024 WL 4476660 (N.D. Ala. Oct. 11, 2024).

Because "UAB Hospital"—really the Board of Trustees of the University of Alabama—is an arm of the State of Alabama, it is protected by sovereign immunity and this Court lacks subject-matter jurisdiction over the claims asserted against it. Accordingly, the Court must dismiss them.

## III.  Claims Against UAB Medical West

Like the claims brought against UAB Hospital, the only claim potentially relevant to UAB Medical West appears to be Count IV. *See* Doc. 1 at ¶33. Plaintiffs, however, sued the wrong entity. UAB Medical West dissolved in 2017 after transferring its assets to The Health Care Authority for Medical West, which later

8

reincorporated as Medical West Hospital Authority. *See* Doc. 12 at ¶1; Doc. 12-1 at 2-4.

Plaintiffs mailed the summons to "UAB Medical West, an Affiliate of UAB Health Sysem, c/o CT Corporation System, Registered Agent 2, North Jackson St., Suite 605, Montgomery, AL 36104." Doc. 12-1 at 4 (citing Doc. 4). But Medical West's registered address is 701 20th Street South, Suite 820, Birmingham, Alabama, 35233, and its registered agent is W. John Daniel. Doc. 12-3 at 1.

On this basis, Medical West moves to dismiss for insufficient service of process and lack of personal jurisdiction under Rules 12(b)(2) and (5). Doc. 12-1 at 4. Plaintiffs had 90 days from filing to perfect service. *See* Fed. R. Civ. P. 4(m); Doc. 1. Ordinarily, the Court would refrain from resolving the case on the merits before being assured of personal jurisdiction. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999). But a more critical flaw demands immediate attention: Plaintiffs lack standing, and therefore the Court lacks subject-matter jurisdiction.

Standing exists when (1) the plaintiff suffered an injury in fact; (2) the injury is fairy traceable to the defendant; and (3) it is likely that the injury will be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

The Court need not address whether Plaintiffs can, as third parties, assert the Fourth Amendment violations they allege Tyler suffered; or whether the alleged

interference with their "familial rights" is sufficiently concrete to constitute a legally cognizable injury. That is because traceability is clearly absent since Plaintiffs do not demonstrate any causal link between their allegations and Medical West.

Article III traceability requires more than "bare speculation." *Deep S. Ctr. for Env't Just. v. United States Env't Prot. Agency*, 138 F.4th 310, 326 (5th Cir. 2025); *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 714 (6th Cir. 2015) (concluding that, for purposes of traceability, "causation means more than speculative but less than but-for").

Plaintiffs allege that Tyler received medical care at UAB Hospital. Doc. 1 at ¶26. But nothing connects those allegations to Medical West. Instead, Plaintiffs confess that they only named Medical West "to preserve claims related to any role it played" in Tyler's seizure following the shooting. *Id.* at ¶16. But Plaintiffs have not developed that possibility into any specific allegation of wrongdoing. Thus the claims against Medical West rely solely on speculation that it *might have* played some role in causing Plaintiffs' harm. Plaintiffs have therefore not traced their injuries to Medical West; rather, the allegations as they stand suggest that their harm is attributable to "the independent action of some third party." *Corbett v. Transp. Sec. Admin.*, 930 F.3d 1225, 1232 (11th Cir. 2019).

Because Plaintiffs fail to trace their injuries to Medical West, they lack standing. Accordingly, the Court lacks subject-matter jurisdiction and must dismiss the claims against Medical West.

## IV.    Claims Against the Bibb County Commission & City of Woodstock

Plaintiffs attempt to state a claim against the Bibb County Commission and the City of Woodstock under 42 U.S.C. § 1983 alleging "constitutional injuries" resulting from their failure to train and supervise officers regarding use of force. *See* Doc. 1 at ¶¶34-37.

### A. City of Woodstock

In 1978, the Supreme Court held that municipalities may be liable under § 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Municipalities may be liable only for their own unconstitutional or illegal policies or customs, but not for the acts of their employees. *Id.* at 693-94. Thus, a municipality is not automatically liable under § 1983 "even if it inadequately trained or supervised its police officers" and those officers violated someone's rights. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Instead, there are only limited circumstances in which an allegation of a failure to train or supervise can be the basis for liability under § 1983. *Id.* These limited circumstances occur only "where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy causes the employees to violate a citizen's

11

constitutional rights." *Id.* Because municipalities rarely possess an express "policy of inadequately training or supervising its employees," a plaintiff may prove the existence of such a "policy by showing that the municipality's failure to train evidenced a 'deliberate indifference' to the rights of its inhabitants…." *Id.*

To establish deliberate indifference, a plaintiff must present some evidence that the municipality "knew of a need to train and/or supervise in a particular area" and the municipality "made a deliberate choice not to take any action." *Id.* Absent such notice, a municipality is not liable as a matter of law for any failure to train or supervise. *Id.* at 1351. Such notice can be established, for example, by showing a history of widespread prior abuse, or a pattern of incidents putting the city on notice of a need to train its employees. *Id.* at 1351-52. In *Brooks v. Scheib*, the Eleventh Circuit held that, though there had been ten citizen complaints about a city's police officer, the city did not have any notice of past police misconduct because the plaintiff "never demonstrated that past complaints of police misconduct had any merit." 813 F.2d 1191, 1193 (11th Cir. 1987). This high standard of proof is "intentionally onerous for plaintiffs" because "imposing liability on a municipality without proof that a specific policy caused a particular violation" would "equate to subjecting the municipality to *respondeat superior* liability—a result never intended by section 1983." *Gold*, 151 F.3d at 1351 n.10.

Plaintiffs contend that the City of Woodstock failed to train or supervise its officers regarding "crisis response, firearms use, interagency coordination, and unified command" and that its "practices, customs, or policies" "allowed or enabled reckless use of force and lack of coordination." Doc. 1 at ¶¶34-36.

But they identify no practice, custom, or policy producing their alleged harm, and they point to no facts supporting those allegations. Neither do they allege that the City of Woodstock was deliberately indifferent to the possibility of such violations, nor do they allege any incidents that might have put the city on notice of a need to supervise or train its officers on these issues. "To establish a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *Depew v. City of St. Marys, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986). "Generally, a plaintiff must show multiple similar, past, meritorious complaints against a police force to prove a custom condoning excessive force." *White v. City of Birmingham, Ala.*, 96 F. Supp. 3d 1260, 1282 (N.D. Ala. 2015). Even taking everything Plaintiffs allege as true, their allegations are simply insufficient, as a matter of law, to constitute anything approximating liability under *Monell*. For that reason, their claims against the City of Woodstock fail and must be dismissed.

### B. Bibb County Commission

Local government entities cannot be liable for the acts of individuals not under their authority. *Turquitt v. Jefferson Cnty.*, 137 F.3d 1285, 1292 (11th Cir. 1998). The

13

Court must instead look to "which government body, under state law, had direct control over how the [officers] fulfilled [the duty at issue]." *Id.*

The Alabama Constitution designates sheriffs and deputy sheriffs as state employees. ALA. CONST. art. V, § 112. While each county has a sheriff, "sheriffs" are "executive officers of the State," and "a deputy sheriff is the alter ego of the sheriff." *Ex parte Underwood*, No. SC-2024-0263, 2025 WL 1776225, at *2, 4 (Ala. June 27, 2025). The sheriff has "exclusive authority to hire, fire, and train deputies." *Cofield v. Randolph Cnty. Comm'n*, 844 F. Supp. 1499, 1501 (M.D. Ala. 1994).

In contrast, county commissions are "creatures of statute" that have "no inherent powers." *Dillard v. Baldwin Cnty. Comm'n*, 833 So. 2d 11, 16 (Ala. 2002). Any authority a county commission has must come from a statutory directive. *Id.* Alabama law requires counties to provide facilities and equipment to law enforcement but does not authorize counties to "assist the sheriff in fulfilling his police function." *Cofield*, 844 F. Supp. at 1501. "Because sheriffs and their deputies are state officers not county employees, a county commission may not be held liable on the theory of respondeat superior." *Id.* Thus, the Bibb County Commission cannot be held liable for any actions that Plaintiffs allege were taken by the Bibb County Sheriff's Office.

Under Alabama law, the Bibb County Police Department is the government body with authority over police officers within Bibb County, not the Bibb County

14

Commission. Without such supervisory authority, "a county commission may not be held liable for failing to train [officers]." *Id.* Plaintiffs' barebones assertion that the Commission has a "statutory role in supporting and overseeing county-involved operations" is unsupported by any legal authority and runs counter to Alabama law. Doc. 22 at 4. Accordingly, their claims against the Commission on that basis fail as a matter of law and must be dismissed.

## CONCLUSION

Plaintiffs' complaint is an impermissible "shotgun pleading" and engages in illicit fictitious-party pleading. The Court lacks subject-matter jurisdiction to hear Plaintiffs' claims against UAB Hospital and Medical West. Plaintiffs do not allege facts that would support a § 1983 claim against the City of Woodstock under *Monell*, and therefore their claims against it fail as a matter of law. And Plaintiffs have failed to state a claim against the Bibb County Commission. Accordingly, the Court **STRIKES** the fictitious defendants, **DISMISSES** the claims against UAB Hospital and the Bibb County Commission **WITH PREJUDICE**, and **DISMISSES** the claims against Medical West and the City of Woodstock **WITHOUT PREJUDICE**.

**DONE** and **ORDERED** this 20th day of March, 2026.

_____
**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE